RENDERED:  JULY 31, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1275-MR

LEISA TALBOTT-FIELDS AND
RODNEY FIELDS                                                         APPELLANTS


                      APPEAL FROM BOYLE CIRCUIT COURT
v.                    HONORABLE WHITNEY Z. JOHNS, JUDGE
                      ACTION NO. 22-CI-00170


EPHRAIM MCDOWELL REGIONAL
MEDICAL CENTER, INC.                                                   APPELLEE


OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; McNEILL AND MOYNAHAN,
JUDGES.

THOMPSON, CHIEF JUDGE:  Leisa Talbott-Fields and Rodney Fields

(Appellants) appeal from an order of the Boyle Circuit Court entered on September

24, 2025, granting summary judgment in favor of Ephraim McDowell Regional

Medical Center, Inc. (Appellee).  Appellants argue that the circuit court erred in

granting Appellee summary judgment on their claims of ostensible agency for the negligence of Mrs. Talbott-Fields' treating physician, Dr. Melissa Haddix. They also argue that they offered evidence sufficient to defeat Appellee's motion for summary judgment on their claim of direct negligence. After careful review, we 1) affirm the portion of the order on appeal granting summary judgment for Appellants' claim of ostensible agency; and 2) reverse and remand the circuit court's grant of summary judgment as to Appellants' claim that Appellee's employees were negligent.

## FACTS AND PROCEDURAL HISTORY

On May 26, 2021, Mrs. Talbott-Fields was hanging a decorative sign on her living room wall when she felt a pop between her shoulder blades. She immediately experienced pain, and her husband, Mr. Fields, called for an ambulance. Boyle County EMS was dispatched to the Fields' residence on a "chest pain" call. Upon arrival, Mrs. Talbott-Fields reported pain between her shoulder blades, and she was able to walk to the ambulance. She reported to EMS personnel that she had been using methamphetamine and marijuana. She stated that the pain between her shoulder blades occurred when she was lifting a heavy picture frame.

While in the ambulance on the way to Appellee's medical center, EMS personnel evaluated Mrs. Talbott-Fields for a cardiac event. Upon arrival,

Appellee's paramedic, Justin Kendrick, recorded Mrs. Talbott-Fields' chief complaint as chest pain based upon the symptoms reported by Mrs. Talbott-Fields during the triage process.

Shortly thereafter, Mrs. Talbott-Fields gave her consent to treatment at Appellee's medical center. Though she did not sign the consent form, she would later testify that Appellee's personnel either obtained her consent or read her the consent form. The consent form stated that Mrs. Talbott-Fields acknowledged that any independent contractors who may treat her are not employees or agents of Appellee. Mrs. Talbott-Fields signed an identical form approximately five weeks earlier on a prior visit to Appellee's medical center.

At 1:44 a.m., Dr. Melissa Haddix examined Mrs. Talbott-Fields, which included a patient history, assessment of Mrs. Talbott-Fields' symptoms, and a physical examination. Dr. Haddix charted that Mrs. Talbott-Fields presented to the medical center with acute symptoms of chest pain, as well as pain between her shoulder blades, shortness of breath, and use of methamphetamine. Dr. Haddix performed blood tests and an EKG, which ruled out a cardiac event. She determined that Mrs. Talbott-Fields was stable and discharged her with instructions to see her primary care provider within 24 to 48 hours and to return to the emergency room if her symptoms worsened. Dr. Haddix would later state that she was never informed that Mrs. Talbott-Fields had experienced back pain. She

would state that had she been so informed, she would have ordered an MRI and other tests which would have disclosed Mrs. Talbott-Fields' underlying spinal infection.

Three days later, on May 29, 2021, Mrs. Talbott-Fields returned to Appellee's emergency room via ambulance reporting symptoms of weakness, paralysis, shoulder pain, and inability to urinate or defecate. She was transferred to the University of Kentucky Medical Center, where tests revealed that the cause of her symptoms was methicillin-resistant spinal abscesses. She received surgery for the abscesses and was treated with IV antibiotics for about two months. Mrs. Talbott-Fields continued to have weakness and loss of motor function. She was confined to a wheelchair and later moved to a skilled nursing facility.

On May 20, 2022, Appellants filed the instant action in Boyle Circuit Court against several defendants including Appellee. They alleged in relevant part that one of Appellee's employees, including Dr. Haddix as Appellee's ostensible agent, were negligent in the diagnosis and treatment of Mrs. Talbott-Fields proximately resulting in her paralysis from the waist down.

On February 28, 2025, multiple defendants moved for summary judgment on various matters. Appellee filed four motions. One motion sought partial summary judgment on Appellants' claim that Dr. Haddix was Appellee's

ostensible agent. Another sought summary judgment on Appellants' claims of negligence against Appellee arising from the acts of its employees.

On August 4, 2025, the Boyle Circuit Court entered an order granting Appellee's motion for partial summary judgment on Appellants' claim of agency, and on its motion for summary judgment as to the negligence of Appellee's employees. Appellants' motion to reconsider was denied by way of an order entered on September 23, 2025, and this appeal followed.

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Id.* "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material

fact." *Id.* Finally, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

## ARGUMENTS AND ANALYSIS

Appellants argue that the Boyle Circuit Court erred in its order granting Appellee's motion for summary judgment. They contend that when the record is viewed in a light most favorable to Appellants, there is sufficient evidence to defeat summary judgment on their claims that Dr. Haddix was an ostensible agent of Appellee, and/or that Appellee is vicariously liable for Dr. Haddix's negligence. Appellants point to *Middleton v. Frances*, 77 S.W.2d 425, 426 (Ky. 1934) (internal quotation marks and citation omitted), for the principle that an apparent or ostensible agent is "one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." They argue that agency liability in a hospital setting does not require an express representation to the patient that the health care professional is an agent of the hospital. Rather, they argue that such agency may be implied when the hospital leads a patient to believe that the treating physicians are hospital agents or employees.

Applying this principle here, Appellants argue that the circumstances surrounding the evaluation and treatment of Mrs. Talbott-Fields reasonably led her to believe that Dr. Haddix was Appellee's agent. They contend that Mrs. Talbott-Fields was in a diminished capacity when she was admitted to the ER and presented with the consent form purporting to state that medical personnel may not be Appellee's employees; that she did not sign the consent form; that the consent form is ambiguous and self-serving; and, that it is a contract of adhesion which was imposed on Mrs. Talbott-Fields via Appellee's superior bargaining power. In sum, Mrs. Talbott-Fields argues that when viewed in a light most favorable to her, and considering all the factors surrounding her evaluation and treatment, the circuit court erred in failing to conclude that genuine issues of material fact remain for adjudication and that Appellee was not entitled to a judgment as a matter of law.

"An apparent or ostensible agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." *Sneed v. Univ. of Louisville Hosp.*, 600 S.W.3d 221, 232 (Ky. 2020) (citations omitted). "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack

of care or skill of the one appearing to be a servant or other agent as if he were such." *Id.* (citations omitted).

Further, "[t]he burden of proving agency is on the party alleging its existence." *Id.* (internal quotation marks and citations omitted). Finally, "[a]**bsent notice to the contrary**, . . . [a] plaintiff had the right to assume that the treatment received was being rendered through hospital employees and that any negligence associated with that treatment would render the hospital responsible." *Id.* (citations omitted) (emphasis in original).

Here, the consent form had a section heading in bold font stating, "Acknowledgment That Independent Contractors Are Not Employees of Agents." It provided that,

> I understand and acknowledge that independent contractors who are not employees of [Appellee] may provide services to me at [Appellee's medical center]. I consent to services being provided by such independent contractors. Such independent contractors are not employees or agents of [Appellee] but are independent medical practitioners who have been permitted to use facilities for the care and treatment of patients. These professionals may include, but are not limited to, admitting and/or attending physicians, consulting physicians, on-call physicians, emergency room physicians, hospitalists, radiologists, anesthesiologists, pathologists, surgeons, obstetricians, medical students, resident physicians, other specialists and allied health professionals employed by such providers. I understand that [Appellee] does not control or direct the care of patients by independent contractors. I acknowledge that my decision to seek care at [Appellee's medical center] is

not based upon an[y] understanding, representation or advertisement that these independent contractors are employees or agents of [Appellee].

The consent form unambiguously provides that the patient understands and acknowledges that she may be treated by independent contractors who are not Appellee's employees. Mrs. Talbott-Fields did not sign Appellee's consent form when she was admitted to the ER on May 26, 2021. She did sign an identical consent form, however, some five weeks earlier on April 20, 2021, when she sought treatment at Appellee's medical center for a different medical issue. Further, when asked in deposition whether Appellee "obtain[ed] your consent or read you a form where they were getting your consent to treat you," Mrs. Talbott-Fields replied, "I'm sure they did."

We conclude that Mrs. Talbott-Fields' signature on the April 20, 2021, consent form, coupled with her acknowledgement that Appellee obtained her consent or read the consent form to her on May 26, 2021, constitutes "notice to the contrary" per *Sneed*. While Mrs. Talbott-Fields may have properly assumed that the treatment received was being rendered by hospital employees, that assumption had no legal effect after she was given notice that she may be treated by independent contractors who were not Appellee's employees. The record amply demonstrates that Mrs. Talbott-Fields received that notice. As such, even when viewing the record in a light most favorable to Mrs. Talbott-Fields and resolving

all doubts in her favor, *Steelvest*, 807 S.W.2d at 480, we conclude that summary judgment in favor of Appellee was appropriate on the issue of ostensible agency.

Appellant also argues that the entry of summary judgment was improper on her claim that the negligence of Appellee's employees proximately resulted in her damages. In support of this argument, Mrs. Talbott-Fields directs our attention to the testimony of expert witnesses who opine that Appellee's triage staff negligently failed to communicate to Dr. Haddix that Mrs. Talbott-Fields' initial complaint was back pain rather than chest pain.

Krista Dillon, RN, who Appellants characterize as a nursing expert, believed that the nurses and hospital paramedic who cared for Mrs. Talbott-Fields at Appellee's medical center violated the applicable standards of care by failing to accurately document Mrs. Talbott-Fields' symptoms, history, and their assessment in her chart. Specifically, according to Ms. Dillon, paramedic Kendrick failed to document in his triage of Mrs. Talbott-Fields that the EMS reported that it had been dispatched for complaints of chest pain and back pain. Also, per Nurse Dillon, the nurses and paramedic should have notified Dr. Haddix of the elevated C reactive protein, elevated white blood cell count, and the normal cardiac enzyme lab result.

Appellants also direct our attention to the opinions of Dr. Michael Ritter. He stated his belief that Appellee's nurses and paramedic Kendrick violated

the standard of care by failing to document Mrs. Talbott-Fields' upper back pain that had been reported by Mr. Fields to EMS. Appellants contend that if Mrs. Talbott-Fields' back pain had been properly documented, Dr. Haddix would have investigated Mrs. Talbott-Fields' back pain and discovered the spinal infections. Dr. Haddix stated as much in her deposition.

Finally, Appellants point to the opinion of expert Dr. James B. Macon. He stated that in light of Mrs. Talbott-Fields' report of a pop in her back, acute pain, and report of back pain to EMS personnel, in addition to her elevated white blood cell count and elevated C reactive protein, Appellee's paramedic and nursing staff should have focused on Mrs. Talbott-Fields' back pain rather than possible cardiac issues.

In response, Appellee asserts that Appellants' argument on this issue fails to demonstrate any expert basis for finding causation. Without this necessary element of a medical negligence claim, Appellee contends that Appellants' argument must fail and that Appellee was entitled to summary judgment.

Again, the record must be viewed in a light most favorable to Appellants, with all doubts resolved in their favor. *Id.* Appellants are prepared to present expert testimony that the nurses and hospital paramedic who triaged Mrs. Talbott-Fields at Appellee's medical center violated the applicable standard of care by failing to accurately document her symptoms, history, and their assessment in

-11-

her chart. Further, Dr. Haddix stated that if the medical history and chart noted Mrs. Talbott-Fields' back pain as the basis for her ER visit, she would have ordered an MRI.

In granting summary judgment on Appellants' direct negligence claim, the Boyle Circuit Court did not reveal the basis for its ruling other than to cite the *Steelvest* language that there is no genuine issue of material fact and that Appellee is entitled to a judgment as a matter of law. The circuit court's underlying reasoning is not evident. The Kentucky Supreme Court has repeatedly admonished that summary judgment is to be cautiously applied, and is not a substitute for trial. *Id.* As there is credible expert opinion testimony stating that Appellee's employees violated the applicable standard of care owed to Mrs. Talbott-Fields, and in light of the requirement that we view the record in a light most favorable to Appellants and resolve all doubt in their favor, summary judgment on Appellants' direct liability claim was not warranted.

## CONCLUSION

For these reasons, we 1) affirm the order of the Boyle Circuit Court granting partial summary judgment on Appellants' claim of negligence via ostensible agency; 2) reverse the order granting summary judgment on Appellants' direct negligence claim; and 3) remand the matter to the Boyle Circuit Court for further proceedings.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Jerome P. Prather
Lexington, Kentucky

Thomas Wm. Arbon, *pro hac vice*
Dallas, Texas

BRIEF FOR APPELLEE:

Pamela Chesnut
Robert R. May
Lexington, Kentucky